IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

APRIL WESTBROOK,                    )
                                    )
              Plaintiff,            )
vs.                                 )        NO.  CIV-12-0051-HE
                                    )
GOOD NEIGHBOR CARE CENTERS          )
LLC, ET AL.,                        )
                                    )
              Defendants.           )

## ORDER

Plaintiff April Westbrook brings this suit against defendants Good Neighbor Care Centers LLC, d/b/a Rambling Oaks Courtyard of Oklahoma City ("Rambling Oaks" or "GNC"), Wilkinson Rambling Oaks Asset Management, LLC d/b/a Wilkinson Rambling Oaks Lessee, and Wilkinson Rambling Oaks Leasco, LLC d/b/a Wilkinson Rambling Oaks Lessee.  She asserts claims of race discrimination, racial harassment, and the creation of a hostile work environment under both Title VII and 42 U.S.C. § 1981, and state law claims of negligent training, supervision, and retention, failure to pay wages, and breach of contract.

Defendants have moved for summary judgment,[1] which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the

---

[1]*The motion is submitted on behalf of all three defendants and does not address the precise relationship between each of them and the plaintiff.*

evidence presented." <u>Tabor v. Hilti, Inc.</u>, —F.3d—, 2013 WL 150225 at *4 (10th Cir. Jan. 15, 2013).[2]  The court has viewed the evidence and any reasonable inferences that might be drawn from it in the light most favorable to plaintiff, the nonmoving party, and concludes that defendants' motion should be granted in part and denied in part.

<u>Background</u>

Plaintiff, April Westbrook, is an African-American woman.  Plaintiff began working in March, 2011, as a swing shift cook at Rambling Oaks.  The Good Neighbor Care employee handbook states that all employment is at-will, which means "the employment relationship may be terminated by either the employee or GNC at any time, with or without notice and for any or no reason not expressly prohibited by law" [Doc. #45-4 at 5].

Christian DiFrancesco, a Hispanic male, was the Dietary Manager at Rambling Oaks and plaintiff's supervisor.   The parties' submissions indicate plaintiff met in person with DiFrancesco when she first applied for the position, and then DiFrancesco contacted her by phone a week or two later to offer her the job.   According to plaintiff, in response to DiFrancesco's question about how much plaintiff wanted to be paid, she asked him for $10.00 per hour and that he said nothing.  However, she indicates that at some point he said he could not pay her $10.00, so plaintiff said, "Well, I will at least take nine, and I'll work

---

[2]*Plaintiff's brief repeatedly relies on <u>Sonnentheil v. Christian Moerlein Brewing Co.</u>, 172 U.S. 401 (1899), for the proposition that uncorroborated "self-serving" testimony from a witness should be disregarded for summary judgment purposes and, indeed, stricken.  Whatever may have been the standard for summary judgment in the 19th Century, that is plainly <u>not</u> the standard now. See <u>Sanchez v. Vilsack</u>, 695 F.3d 1174, 1180 n. 4 (10th Cir. 2012) (unpublished) and cases cited therein.*

my way up," to which DiFrancesco responded, according to plaintiff, "Okay. Well, I'll give you nine" [Doc. #49-3 at 56:14-22].  Plaintiff further testified that both DiFrancesco and Alex Baggs, the Executive Director of the facility, verbally told her she would be paid $9.00. Defendants dispute there was any such agreement.  There was no contemporaneous document stating the rate.  Plaintiff's first paycheck compensated her at a rate of $8.50 per hour.  There is evidence that she originally did not cash the check, but took it to Baggs who reportedly said that he had to mail it to corporate and that there were other people who did not get their correct pay.  Plaintiff's evidence is that she then cashed the first check and all subsequent pay checks based on the $8.50 per hour rate.

As pertinent to the hostile work environment claim, plaintiff testified to an incident where another employee, Alyssa Hall, and DiFrancesco were having a conversation during which DiFrancesco said, "You watch and see.  This is going to be an all-Latino kitchen" [Doc. #45 at 16].  Plaintiff testified she asked, "Well, how is it going to be an all-Latino kitchen, if you have a full staff?" to which DiFrancesco allegedly  responded, "You watch and see" [Doc. #45 at 16].  Plaintiff's deposition testimony is that she complained to Baggs about DiFrancesco's comment.[3]  DiFrancesco denied making the statement at all, but Baggs' deposition testimony was to the effect that DiFrancesco acknowledged making such a statement, that he said, "'Watch out, I'm just going to' – or 'I will get rid of everybody and

---

[3]*Defendants cited Doc. #46-1 at 75:1-25 for this proposition, but that portion of the deposition testimony does not make that assertion.  However, such testimony is found at Doc #49-3 at 72:2-8.*

just have – he'll have – he said, 'Latinos,' the actual word - 'working in the kitchen' – or 'working here.'" [Doc. #49-6 at 17:24-18:4].  According to Baggs, DiFrancesco told him it was a joking comment and Baggs believed it was made in a joking manner.  Baggs says he viewed the comment as "borderline inappropriate" but did not violate any policy because of the joking manner in which it was presented [Doc. #49 at 11].   Baggs did not discipline DiFrancesco over the incident.  Plaintiff indicates she felt her job was being threatened because of the comment.

Plaintiff also referred to an alleged comment by DiFrancesco about black women which she characterized as:  "[H]e just talked bad about black women, saying that black women have bad attitudes and, you know, we don't listen and we put ourself in a man's place, you know.  I guess he was referring to his baby mama, but he said black women, so" [Doc. #49-3 at 111:13-18].  Plaintiff also testified that DiFrancesco said, "African American women is only good for because – sex because we got the big booty" [Doc. #49-3 at 112:1-3].  She testified she didn't tell Baggs about the comment and testified that DiFrancesco "didn't actually say" some portion of this but that she inferred from circumstances what DiFrancesco meant with the prior statement [Doc. #49-3 at 112:7-14].

Plaintiff claims DiFrancesco discriminated against her by treating a Hispanic employee, Ledya, differently than he did her.  Specifically, plaintiff says that, when plaintiff was around, Ledya and DiFrancesco would speak Spanish to each other and that she (plaintiff) didn't know whether they were talking about her, but suspected it.  She also testified that he treated the Latino employees better than everyone else, "holler[ing]" at them

4

when they made mistakes but "hollering, yelling, throwing things" when anyone else in the kitchen made mistakes, and testified that he was calm and spoke Spanish with the Hispanic employees [Doc. #49-3 at 89:3-10].

There are factual disputes as to the circumstances surrounding plaintiff's separation from service at Rambling Oaks. Defendants contend plaintiff abandoned her employment at Rambling Oaks by "failing to call in or show up to work" [Doc. #45 at 11] and that, on August 15, 2011, plaintiff's employment was officially terminated internally. Plaintiff contends she was terminated, stating that on July 25, she called DiFrancesco to tell him she would not be able to make it into work because she did not have sufficient gas money. She contends she told him she would try her best to make it, that she ran out of gas on her way, called a friend to pick her up, and that friend drove her on to Rambling Oaks to pick up her check. She alleges that she told DiFrancesco she would cash her check, get gas in her car, and come back to work, but that he responded, "I'm sick of it, I'm tired. We're going to talk to [Baggs]" [Doc. #45 at 18]. She contends Baggs said he would call her if she was needed again, but that he never called. She testified that she called Baggs and he said it was not working out so plaintiff "left it at that" [Doc. #49-3 at 86:8-9]. She contends she was not scheduled to work on July 30, 2011, because she was terminated as of July 25, 2011.

As to the wage matter, plaintiff admits she received a check dated August 10, 2011, for $180.45. Plaintiff contends this check was payment for 22.50 hours plaintiff worked between July 16, 2011, and July 24, 2011. However, defendants contend plaintiff picked up her final earnings pay check on July 25, and the August 10 pay check was for 20 hours of

paid time off ("PTO").  Therefore, they say plaintiff has received all money due to her.

Plaintiff submitted a letter from Jackie Robinson, the Business Office Manager for Rambling

Oaks stating that plaintiff would receive her last check on August 25, 2011, for 20 hours of

paid time off.  A timecard report for plaintiff indicates that she worked 22.5 hours during the

July 16-July 24 period.

Analysis

A. Race Discrimination

Defendants' motion does not squarely address plaintiff's separate claim for race

discrimination under Title VII or § 1981, as it does not address the McDonnell Douglas

burden-shifting framework, McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  And

even if the pertinent standards had been more directly addressed, it appears plaintiff has

produced evidence sufficient to create a justiciable question as to this claim.  Therefore,

summary judgment will be denied as to plaintiff's claim for wrongful discharge based on

race.[4]

B. Hostile Work Environment/Harassment

Plaintiff bases her hostile work environment claim on four different allegations: (1)

DiFrancesco made derogatory comments to plaintiff about African-American women; (2)

---

[4] *Plaintiff's complaint addresses both race discrimination and harassment in the same count, potentially causing confusion as to whether she intended to assert both types of claims.  However, defendants appear to recognize that she asserts both types under both Title VII and § 1981. Their Proposition I states: "The Plaintiff does not offer evidence sufficient to justify a reasonable jury in finding racial discrimination or the creation of a racially hostile work environment either under Title VII or 42 U.S.C. § 1981" [Doc. #45 at 22].*

DiFrancesco "hollered, yelled and threw things" at some employees but not others; (3) DiFrancesco "constantly spoke Spanish"; and (4) DiFrancesco threatened on "multiple occasions" to have an "all-Latino kitchen" [Doc. #49 at 32-33].

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . .," which includes creating or permitting a racially hostile work environment. Hernandez v. Valley View Hosp. Ass'n, 684 F.3d 950, 957 (10th Cir. 2012) (quoting 42 U.S.C. § 2000e–2(a)(1)) (additional citation omitted).[5]

> To survive summary judgment on a claim alleging a racially hostile work environment, [the plaintiff] must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that the victim was targeted for harassment because of [her] race or national origin.

Id. (internal quotation marks and citation omitted). However, "Title VII does not establish a general civility code for the workplace. Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim." Morris v. City of Colo. Springs, 666 F.3d 654, 663-64 (10th Cir. 2012) (internal quotation marks and citations omitted). Further, "courts should filter out offhand comments, and isolated incidents (unless extremely serious)." MacKenzie

---

[5] "[T]he elements of a hostile work environment claim under § 1981 are the same as those under Title VII." Tademy v. Union Pac. Corp., 614 F.3d 1132, 1152 (10th Cir. 2008) (internal quotation marks and citations omitted).

v. City & Cnty. of Denver, 414 F.3d 1266, 1280 (10th Cir. 2005).

To determine whether a work environment is hostile or abusive, courts look at factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Hernandez, 684 F.3d at 957-58 (citation omitted). "The 'totality of the circumstances' is 'the touchstone of [a hostile work environment] analysis.'" Id. at 959.

"Pervasiveness and severity are independent and equal grounds on which to support violations of § 1981." Witt v. Roadway Express, 136 F.3d 1424, 1432 (10th Cir. 1998) (citations omitted). As to pervasiveness, "[a] plaintiff cannot meet this burden by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments." Chavez v. New Mexico, 397 F.3d 826, 832 (10th Cir. 2005) (internal quotation marks and citations omitted); see also Morris, 666 F.3d at 666.

Here, the court concludes there is insufficient evidence to create a justiciable question as to whether the alleged harassment was sufficiently pervasive to alter the conditions of plaintiff's employment. Speaking Spanish in the workplace does not, in and of itself, constitute hostile or abusive conduct. Montes v. Vail Clinic, Inc., 497 F.3d 1160, 1170 (10th Cir. 2007) (quoting Maldonado v. City of Altus, 433 F.3d 1294, 1304 (10th Cir. 2006), abrogated in part on other grounds, Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 66-68 (2006)). There is nothing remarkable about the use of Spanish in the

circumstances existing here and plaintiff's speculation that they may have been talking about her falls short of showing any sort of offensive comment.  The alleged comment by DiFrancesco about African-American women is the only episode she specifically identified of that sort and is the sort of isolated incident that courts have been cautioned to filter out in the Title VII context.  Further, based on plaintiff's description of the incident, there is some doubt as to exactly what was said or how she viewed it at the time, but it was, in any event, isolated.

The testimony as to the "all-Latino kitchen" comment indicates it was also an isolated instance, as well as not being the sort of offensive utterance suggesting a hostile work environment.  While plaintiff's brief claims this comment was made on "multiple occasions" [*see* Doc. #49 at 8], plaintiff testified that DiFrancesco made the comment "just that one time" [Doc. #49-3 at 84:15-20].

Finally, plaintiff's testimony about the difference in manner in which DiFrancesco treated Hispanic and non-Hispanic employees also does not support a conclusion of pervasiveness.  Plaintiff testified that DiFrancesco treated Hispanics "a little different than he did everybody else" [Doc. #49-3 at 89:3–4].  She said he would "holler" at Hispanic employees if they did anything wrong, but that if "anybody else in the kitchen made a mistake or anything, he's hollering, yelling, throwing things" [Doc. #49-3 at 89:4-8].  Plaintiff provides no specifics as to exactly how or when any such incident occurred.[6]  *See*

---

[6]*The evidence presented does not support the statement in plaintiff's response brief that "he constantly hollered, yelled and threw things _at her_" [Doc. #49 at 32 (emphasis added)].*

Morris, 66 F.3d at 665-66 (de-emphasizing allegations that the defendant's employee "would yell at [plaintiff] [and] demean her work" as she did "not elaborate on the circumstances surrounding the making of these comments").  In any event, plaintiff's testimony does not provide a basis for drawing pertinent inferences here based on the difference between "hollering and yelling" versus "hollering, yelling and throwing things."

The evidence offered is not sufficient to create a justiciable issue based on the "pervasive" nature of the alleged offensive conduct.  Nor were the comments allegedly made by DiFrancesco sufficiently "severe" or serious to warrant a finding of a hostile work environment on that basis.  *See generally* Tademy, 614 F.3d at 1144; Witt, 136 F.3d at 1433.

The court concludes that the plaintiff has not presented evidence sufficient to create a justiciable question as to whether the workplace was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Hernandez, 684 F.3d at 957 (citations omitted).  As such, defendants' motion will be granted as to the hostile work environment and harassment claims under Title VII and § 1981.

C. Negligent Hiring, Supervision, and Retention

Plaintiff's claim for negligent training, supervision, and retention also fails.  As the court has granted summary judgment on plaintiff's claims of harassment and the creation of a racially hostile work environment, plaintiff's claim of negligent supervision and retention,

to the extent based on those underlying harassment allegations, cannot succeed.[7]

Summary judgment is also warranted on the negligent training claim to the extent it is based on race discrimination.  In Oklahoma, an employer may be liable for negligent hiring, supervision, or retention of an employee.  N.H., 998 P.2d at 600.  Liability is based on the employer's own negligence.  *Id.*  However, this theory of recovery is only available if vicarious liability is not established.  *Id.*; Jordan v. Cates, 935 P.2d 289, 293 (Okla. 1997) ("[T]he theory of negligent hiring and retention is available . . . in a case where vicarious liability has not been established.").

Defendants contend that they are entitled to summary judgment on plaintiff's negligent hiring, supervision, or retention claim because plaintiff's discrimination claims necessarily rely on vicarious liability, and therefore, the theory of negligent hiring and retention can impose no further liability on the employer.  Plaintiff counters that vicarious liability has yet to be established as defendants have not stipulated to such liability.  However, given the nature of and basis for plaintiff's discrimination claim here, defendants are liable, if at all, only on the basis of their liability for the acts of their employees.  As such, plaintiff's claim of negligent hiring, supervision, and retention is unavailable under

---

[7]*See N.H. v. Presbyterian Church (U.S.A.), 998 P.2d 592, 600 (Okla. 1999) (liability only imposed "if-at the critical time of the tortious incident-, the employer had reason to believe that the person would create an undue risk of harm to others. . . . The critical element for recovery is the employer's prior knowledge of the servant's propensities to create the specific danger resulting in damage"(emphasis added)).*

Oklahoma law.

D. Failure to Pay Wages

Plaintiff has included a state law claim under 40 Okla. Stat. § 165.3 for a failure to pay wages. Both parties submitted a pay stub for a check issued on August 10, 2011[*See* Doc. #49-21], which includes information about both accrued PTO and plaintiff's regular earnings. Defendants contend this check was paid to plaintiff for twenty hours of paid time off, while plaintiff contends the check was in payment for 22.50 hours actually worked during that pay period, and that she was never paid for her twenty hours of accrued PTO.

The pay stub lists the applicable pay period as July 16, 2011, to July 31, 2011. As such, it appears unlikely that plaintiff would have picked up her pay check for that period on July 25, 2011, before the pay period ended on July 31, 2011, as defendants contend. The August 10, 2011, pay stub includes a section called "TIME OFF," under which it states "PTO 2011 – Available" and lists the units at 20.625 hours. *Id.* It also lists payment of $180.45, which was the net pay amount for that check. *Id.* However, in a section labeled "Earnings," the stub indicates that plaintiff had 22.50 hours of regular earnings during that period, which amounts to $191.25 at plaintiff's $8.50/hr rate of pay. It then lists a total of $10.80 in "Withholdings." If the amount of withholdings is reduced from the $191.25 in regular earnings, the total would come to $180.45, the amount paid on that check stub.

As the inferences to be drawn from this group of documents are less than clear, the court concludes that plaintiff has raised a disputed issue of material fact as to whether plaintiff has received all wages due to her. Summary judgment is therefore unwarranted as

to this count.

E. Breach of Contract

Plaintiff contends she was offered and accepted employment at a rate of $9.00 an hour, but that she was instead paid $8.50 an hour and that defendants breached the contract with her in this respect.  Defendants contend there could be no employment contract because plaintiff was an at-will employee.   But the fact that plaintiff was an "at will" employee does not mean that there was no contract, and the absence of a <u>written</u> contract similarly does not mean she cannot have a contract claim.    Plaintiff has offered evidence sufficient to create a justiciable issue as to whether defendants breached an oral contract to pay plaintiff at a rate of $9.00 an hour.  Summary judgment will be denied as to this count.

Conclusion

For the reasons stated, defendants' motion for summary judgment [Doc. #45] is **GRANTED in PART and DENIED in PART**.  Summary judgment is **DENIED** as to plaintiff's claims of race discrimination in violation of Title VII and § 1981, **GRANTED** as to plaintiff's claims of harassment and racially hostile work environment, **GRANTED** as to the claim for negligent training, supervision, and retention, **DENIED** as to the wage claim, and **DENIED** as to the breach of contract claim.

**IT IS SO ORDERED**.

Dated this 4th day of February, 2013.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE